IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN M. HALL,

    Plaintiff,

  v.

JAMES DODGE,

    Defendant.

_____

Civ. No. 6:12-cv-1808-MC

OPINION AND ORDER

MCSHANE, Judge:

  Plaintiff brings this action seeking damages and injunctive relief for alleged violation of his rights under the Fourth Amendment as selectively incorporated by the Fourteenth Amendment Due Process Clause pursuant to 42 U.S.C. § 1983, for alleged violation of his rights under the Oregon Constitution pursuant to the Oregon Torts Claim Act (OTCA), Oregon Revised Statute 30.260 *et seq.*, and for battery pursuant to the OTCA. Both plaintiff and defendant filed motions for summary judgment. This court has jurisdiction under 28 U.S.C. §§ 1331 & 1367. Upon review, defendant's motion for summary judgment (#12) and plaintiff's motion for summary judgment (#16) are GRANTED IN PART and DENIED IN PART.

## PROCEDURAL AND FACTUAL BACKGROUND

  This action arises out of an alleged violative search and seizure conducted on October 26, 2011 by Officer James Dodge in Corvallis, Oregon. At approximately 12:00 p.m., Officer Dodge was on a directed patrol in the area of Southwest 6th Avenue and Southwest D Avenue. Officer Dodge, along with other officers of the Corvallis Police Department, regularly patrolled this

1 – OPINION AND ORDER

location because it was considered a "high crime"[1] area due to its proximity to railroad tracks. Officer Dodge observed plaintiff walking in a very slow manner[2] on a gravel road near the railroad tracks, wearing a dark colored hooded sweatshirt with the hood extended over his head, and wearing a handgun in holster on his hip. Upon making these observations, Officer Dodge parked his vehicle, exited, and then approached Hall. Hall, upon perceiving Officer Dodge's exit, briefly turned to Hall and asked whether he was being detained. Officer Dodge informed Hall that he was not being detained, but asked Hall to keep his hands away from his handgun and informed him that he would like to speak with him.[3] Hall remained silent and didn't answer Officer Dodge's questions. Hall then asked again, whether or not he was being detained and Officer Dodge responded affirmatively.

Upon observing that Hall had a knife clipped to his front pocket, Officer Dodge proceeded to pat down Hall. Officer Dodge didn't find anything other than the knife and gun already identified. Officer Dodge, seeking Hall's identity, was able to acquire the name "Kevin Hall" from articles of mail "held" by Hall.[4] Officer Dodge used his two-way radio to run the license plate of a nearby car to check for ownership under "Kevin Hall," and then to check for

---

[1] Plaintiff contests that this area was a "high crime area." Mem. in Supp. of Pl.'s Mot. for Summ. J. 6, April 12, 2013, ECF No. 16. The crimes associated with this area include criminal trespass and other "transient related crimes and violations." Def.'s Mot. for Summ. J. 2, Apr. 4, 2013, ECF No. 15.

[2] Plaintiff does not contest defendant's characterization of his walk as very slow.

[3] "He turned and said, 'are you stopping me'? I told him 'no' but I wanted to talk to him. I explained to him it is unusual to see someone carrying a handgun especially in the area he was in." Decl. of James Dodge Attachment 1, at 1, Apr. 1, 2013, ECF No. 13.

[4] Plaintiff alleges that Defendant picked up plaintiff's mail off the ground and read the address label names. Complaint ¶ 46-48, Oct. 9, 2012, ECF No. 1; Mem. in Supp. of Pl.'s Mot. for Summ. J. 2, April 12, 2013, ECF No. 16. In contrast, defendant alleges that he was able to see and read the names while plaintiff held the articles of mail. Decl. of James Dodge Attachment 1, at 2, Apr. 1, 2013, ECF No. 13.

2 – OPINION AND ORDER

outstanding warrants for "Kevin Hall." Shortly thereafter,[5] Officer Dodge informed Hall that "he was free to go." Decl. of James Dodge 2, Apr. 1, 2013, ECF No. 13.

## STANDARD OF REVIEW

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonably jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) (citing *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994)). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. (56)(c).

## DISCUSSION

Defendant contends that: (1) his detention and frisk of plaintiff were lawful under the Fourth Amendment; (2) his identification of plaintiff's name from plaintiff's mail was lawful under the Fourth Amendment; (3) he is entitled to qualified immunity under 42 U.S.C. § 1983; and (4), plaintiff's state claims for unreasonable search and seizure and battery are not supported by the Oregon Constitution and are subject to qualified immunity.

## I. Detention and Frisk under the Fourth Amendment

---

[5] Defendant alleges that the entire contact lasted between three to four minutes. Decl. of James Dodge Attachment 1, at 2, Apr. 1, 2013, ECF No. 13.

The Fourth Amendment[6] applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. *Brown v. Texas*, 443 U.S. 47, 50 (1979) (citing *Davis v. Mississippi*, 394 U.S. 721, 726-27 (1969)). A seizure arises when the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded. *United States v. Delgado*, 466 U.S. 210, 217 (1984). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Mere police questioning does not constitute a seizure. *Id.* (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion)). Rather, an officer may, in compliance with the Fourth Amendment, approach an individual on the street or other public place and ask whether the individual is willing to answer questions by putting questions to the individual. *Royer*, 460 U.S. at 497.

Officer Dodge, in uniform, approached Hall and proceeded to engage Hall in conversation.[7] Officer Dodge's initial probing for Hall's identity does not constitute a seizure because it occurred in a public place and related to identity acquisition. *Delgado*, 466 U.S. at 216 ("interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure."). However, "if the [person] refuses to answer and the police take *additional steps* . . . then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure." *Id.* at 216-17 (emphasis added). After

---

[6] This case, involving a police officer from the Corvallis Police Department, is governed by the Fourteenth Amendment Due Process Clause. In *Mapp v. Ohio*, the Supreme Court selectively incorporated the Fourth Amendment through the Fourteenth Amendment Due Process clause and applied it to the states. 367 U.S. 643, 655 & 660 (1961). For purposes of this opinion, the court will use "Fourth Amendment" in lieu of "Fourteenth Amendment Due Process Clause" for ease of convenience.
[7] Officer Dodge contends that he repeatedly asked Hall to identify himself. Decl. of James Dodge Attachment 1, at 2, Apr. 1, 2013, ECF No. 13.

Hall refused to answer Officer Dodge's initial inquiries, Officer Dodge informed Hall that he was being detained "for a moment." Decl. of James Dodge Attachment 1, at 2, Apr. 1, 2013, ECF No. 13. Officer Dodge, by informing Hall he was being detained, seized Hall through show of authority by restraining his freedom of movement. *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980); *Bostick*, 501 U.S. at 435 ("as long as the police do not convey a message that compliance with their requests is required.").

An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Reasonable suspicion is a less demanding standard than probable cause, but still requires an officer to articulate more than an "inchoate and unparticularized suspicion or hunch" of criminal activity. *Id*. at 124 (quoting *Terry*, 392 U.S. at 27) (internal quotation marks omitted). "In evaluating the validity of a stop such as this, we must consider the totality of the circumstances—the whole picture." *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)) (internal quotation marks omitted).

Defendant contends that he had reasonable suspicion to detain Hall based upon: (1) Hall's presence in a high crime area; (2) Hall's manner of dress; (3) Hall's display of a firearm, (4) Hall's refusal to answer posed questions; and (5), Hall's "suspicious" behavior and movement. These facts, even when combined with the experience and legitimate concerns of a trained police officer, do not rise to the level of reasonable suspicion required for temporary detention.

First, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a

5 – OPINION AND ORDER

crime." *Wardlow*, 528 U.S. at 124 (2000) (citing *Brown*, 443 U.S. at 47). Yet, an officer is not required to ignore relevant characteristics of location and may consider relevant contextual considerations in *Terry* detention analysis. *Id*; *Adams v. Williams*, 407 U.S. 143, 144 (1972). Thus, Officer Dodge is entitled to consider Hall's proximity to a "high crime area" known for criminal trespass and other "transient related crimes and violations."[8] However, the "reviewing court must consider the nature of the misdemeanor offense in question, with particular attention to the potential for ongoing or repeated danger (e.g., drunken and/or reckless driving), and any risk of escalation (e.g., disorderly conduct, assault, domestic violence)," *i.e.*, an assessment of "public safety" importance should be considered within the totality of the circumstances. *United States v. Grigg*, 498 F.3d 1070, 1081 (9th Cir. 2007). Here, the relatively harmless investigated "misdemeanor conduct—[alleged criminal trespass]—need not spur the police into instant action as might the opportunity to stop a reputedly armed felon, street fighter, or reckless driver." *Id*. Any threat to public safety from Hall's investigated criminal trespass would have been minimal, and Hall's "interest in personal security against governmental intrusion is entitled to more deference." *Id*.

Second, "[f]or law enforcement officers to base a search, even in part, on a 'pop' guess that persons dressed in a particular fashion are likely to commit crimes not only stretches the concept of reasonable suspicion beyond recognition, but also is inimical to the self-expression which the choice of wardrobe may provide." *Sokolow*, 490 U.S. at 16 (Marshall, J., dissenting); *but see United States v. Chambers*, 918 F.2d 1455, 1462 (9th Cir. 1990) (finding that photographs shown to jury that included defendant wearing expensive clothing and gold jewelry

---

[8] Criminal Trespass in the First Degree and Criminal Trespass While in Possession of a Firearm are both misdemeanors in Oregon. OR. REV. STAT. § 164.255 & 265 (2011).

6 – OPINION AND ORDER

could be considered in determining whether defendant fit "drug courier profile."). Officer Dodge does not allege any link between Hall's dress and criminal trespass, *i.e.*, a "criminal trespass profile." Thus, the nature of Hall's clothing is only relevant to the extent that it is used to "conceal his face."[9] Yet, there is no evidence that Hall adjusted his hood in response to Officer Dodge's approach. Rather, Officer Dodge merely alleges that Hall wore his hood in a manner that appeared to conceal his face; he does not contest that Hall's manner of dress was consistent with the temperature and season.

Third, under Oregon Law, a firearm carried openly in a belt holster is not concealed under ORS § 166.250 and is lawful unless violative of local prohibitions. *State v. Fisher*, 785 P.2d 369, 370 (Or. Ct. App. 1990) (applying ORS § 166.250); *see also* OR. REV. STAT. § 166.250 (2011); *State v. Boyce*, 658 P.2d 577, 579 (Or. Ct. App. 1983) (upholding City of Portland Ordinance prohibiting armed firearms in public places); OR. CONST. art. I, § 27. The City of Corvallis did not prohibit Hall from carrying his firearm openly in a belt holster on a public road or sidewalk. *See generally*, CORVALLIS, OR., CODE §§ tit. 01-10; CORVALLIS, OR, ORDINANCES §§ 1870(01)-2013(11). Where possession of a firearm is permitted, "the exercise of this right, without more, cannot justify an investigatory detention." *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013); *see also United States v. King*, 990 F.2d 1552, 1559 (10th Cir. 1993) ("we cannot accept the government's attempt to justify the seizure of [d]efendants based on . . . safety concerns due to the presence of the pistol.").

Fourth, an "individual has a right to ignore the police and go about his business" if the officer approaches an individual without reasonable suspicion or probable cause. *Wardlow*, 528

---

[9] Officer Dodge claims that Hall's hood was worn in a manner that appeared to be an attempt to conceal his face. Decl. of Kevin Hall Attachment 2, at 3, Mar. 3, 2013, ECF No. 16. Hall contests this characterization and claims that his hood was being worn consistent with the cold weather—twenty seven degrees Fahrenheit. Complaint ¶ 13-15, Oct. 9, 2012, ECF No. 1.

U.S. at 125 (quoting *Royer*, 460 U.S. at 498); *see also*, *Terry*, 392 U.S. at 32-33 (Harlan, J., concurring) ("ordinarily the person addressed has an equal right to ignore the interrogator and walk away . . . ."). Any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for detention or seizure." *Wardlow*, 528 U.S. at 125 (quoting *Bostick*, 501 U.S. at 437). Officer Dodge contends that Hall's "reluctance to answer basic questions" contributed to his reasonable suspicion. Mem. in Supp. of Def.'s Mot. for Summ. J. 3, April 4, 2013, ECF No. 15. However, as discussed *infra* § I, Officer Dodge questioned Hall without reasonable suspicion and, accordingly, Hall was entitled to ignore Officer Dodge's questions.

Fifth, the Supreme Court recognizes that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. *See e.g.*, *Wardlow*, 528 U.S. at 124; *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975); *Sokolow*, 490 U.S. at 4-6. Unlike *Wardlow*, Hall did not engage in "headlong flight," but merely continued walking away at a quicker pace than his prior "very slow" pace. *See Wardlow*, 528 U.S. at 124 ("Headlong flight—wherever it occurs—is the consummate act of evasion . . . ."); *see also Florida v. Rodriguez*, 469 U.S. 1, 5-6 (1984) (finding that respondent moved "as if running" after third-party stated "[l]et's get out of here."). Officer Dodge also contends that Hall "peered back at [him]" and made a "furtive movement" in response to questioning. Decl. of Kevin Hall Attachment 2, at 3, Mar. 3, 2013, ECF No. 16. Yet, such behavior does not rise to the requisite level of evasive or suspicious behavior identified in case law. *See e.g.*, *Id.*; *Sokolow*, 490 U.S. at 4 (finding reasonable suspicion based upon respondent's nervous behavior, respondent's purchase of open return airline tickets with cash under alias, respondent's dress, and respondent's failure to check luggage); *Brignoni-Ponce*, 422 U.S. at 885 ("The driver's behavior may be relevant, as erratic driving or obvious attempts to

8 – OPINION AND ORDER

evade officers can support reasonable suspicion."). Hall's behavior is considered, but it is accorded less weight than in applicable case law.

Defendant contends that aggregated together, these factors constitute reasonable suspicion to detain. *See e.g.*, *United States v. Diaz-Juarez*, 299 F.3d 1138, 1141 (2002) ("Individual factors that may appear innocent in isolation may constitute suspicious behavior when aggregated together."). This contention is without merit. The touchstone of Fourth Amendment analysis is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (quoting *Terry*, 392 U.S. at 19). "Reasonableness, of course, depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id.* (quoting *Brignoni-Ponce*, 422 U.S. at 878) (internal quotation marks omitted). "Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown*, 443 U.S. at 50-51 (citations omitted).

As indicated *supra* § I, the gravity of the public concern—criminal trespass—was minimal, as was the public concern—preventing criminal trespass and "transient related crimes and violations"—served by the seizure. To the extent that Officer Dodge detained Hall because he openly carried a firearm, Officer Dodge's detention interfered with Hall's exercise of his right to bear arms as recognized under the Oregon Constitution. OR. CONST. art. I, § 27. Hall's behavior, even when viewed in the light most favorable to defendant, is insufficient to ripen Officer Dodge's suspicion into reasonable suspicion. There is no evidence that Hall's alleged "concealment" was made in response to Officer Dodge's approach, nor that it was inappropriate

9 – OPINION AND ORDER

for the weather. Likewise, Hall's alleged "furtive" movement and his quickening pace did not rise to the level of "evasive" behavior that would make detention reasonable under the circumstances. Merely increasing one's pace from "very slow" is consistent with "going about one's business." Finally, Hall was not required to respond to Officer Dodge's questions because Officer Dodge lacked reasonable suspicion to detain him. In aggregate, these seemingly innocent individual factors do not meet the reasonable suspicion threshold, *i.e.*, the need to seize Hall was unreasonable vis-à-vis Hall's liberty interference. *See Terry*, 392 U.S. at 21 ("balancing the need to [seize] against the invasion which the [seizure] entails.") (citations omitted) (internal quotation marks omitted).

Under the Fourth Amendment, an officer is permitted to conduct a protective search ("frisk") when he "is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others . . . . [s]o long as the officer is entitled to make a forcible stop." *Adams*, 407 U.S. at 146 (citations omitted) (internal quotation marks omitted); *Terry*, 392 U.S. at 32 (Harlan, J., concurring) ("if the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a forcible stop."). Officer Dodge's detention of Hall violated the Fourth Amendment. *See supra* § I. Thus, Officer Dodge's subsequent frisk was not "justified at its inception" and violated the Fourth Amendment. *See Terry*, 392 U.S. at 20 ("whether the officer's action was justified at its inception . . . .").

## II. Search of Plaintiff's Mail under the Fourth Amendment

"The Fourth Amendment provides in relevant part that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (internal quotation marks

omitted). "When the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." *Id*. (quoting *United States v. Jones*, 132 S. Ct. 945, 950-51 (2012)) (internal quotation marks omitted). Fourth Amendment protections extend beyond property rights—a "search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Jones*, 132 S. Ct. at 954-955 (Sotomayor, J., concurring) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). Thus, a Fourth Amendment violation may arise under either the *Jones* common-law trespassory test or the *Katz*[10] reasonable-expectation-of-privacy test. *See e.g., United States v. Thomas*, No. 11-10451, 2013 WL 4017239, at *5 (9th Cir. Aug. 8, 2013) (quoting *Jones*, 132 S. Ct. at 950).

Plaintiff and defendant offer competing narratives of the search. According to Hall, Officer Dodge "retrieved Hall's dropped mail from the ground where Hall had dropped them." Complaint ¶ 46, Oct. 9, 2012, ECF No. 1; *see also* Mem. in Supp. of Pl.'s Mot. for Summ. J. 10, April 12, 2013, ECF No. 16. Upon retrieving Hall's mail, Officer Dodge "examined the two pieces of mail and read the addresses." Complaint ¶47, Oct. 9, 2012, ECF No. 1. In *Jones*, the Court held that a *de minimis* physical intrusion with respect to the exterior of a car was a search. *Thomas*, 2013 WL 4017239, at *5 (citing *Jones*, 132 S. Ct. at 949 & 954). By extension, Officer Dodge's alleged retrieval of Hall's mail (an effect), even if *de minimis*, conceivably constitutes an unconstitutional trespass or physical intrusion. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984) ("Letters and other sealed packages are in the general class of effects . . . .").

---

[10] In *Katz v. United States*, Justice Harlan formulated that protections afforded by the Fourth Amendment are determined by a "twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable." 389 U.S. 347, 361 (Harlan, J., concurring) (internal quotation marks omitted).

According to Officer Dodge, he merely saw Hall's mail as it was being held in Hall's right hand, and then read the names and addresses listed on the outside of the articles. Mem. in Supp. of Def.'s Mot. for Summ. J. 4, April 4, 2013, ECF No. 15; Decl. of James Dodge Attachment 1, at 2, Apr. 1, 2013, ECF No. 13. If Officer Dodge's story is credited, then his actions are not a search under *Jones* because they did not do "more than conduct a visual inspection" of the mail—a "mere visual observation does not constitute a search." *Jones*, 132 S. Ct. at 952-953. Under the *Katz* test, "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment Protections." *Katz*, 389 U.S. at 351. The Ninth Circuit held in *United States v. Quoc Viet Hoang*, that "the Fourth Amendment is not implicated when only the external features of a package, like the address label are examined; there is no reasonable expectation that the outside of a package given to a mail-carrier will be kept private." 486 F.3d 1156, 1159 (9th Cir. 2007); *United States v. Jefferson*, 566 F.3d 928 (9th Cir. 2009) (finding that the "postal inspector's visual inspection of the package did not implicate the Fourth Amendment."). Consistent with *Hoang*, Hall is unlikely to be found to have a protected *Katz* interest in the address label to the extent that Officer Dodge's narrative is credited. Thus, there remains a genuine issue of material fact as to the nature of the address label viewing and neither party is entitled to summary judgment.

## III. Qualified Immunity under § 1983

Defendant contends that he is entitled to qualified immunity. In a § 1983 action, an officer will be denied qualified immunity "only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, showing that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that

situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). Officer Dodge, per analysis *supra* § I, violated Hall's constitutional right to be free from unreasonable search and seizure under the first *Saucier*-prong.

As to the second *Saucier*-prong, "[i]f the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Hall's right to be free from unreasonable search and seizure is clearly established—"[n]o right is held more sacred, or is more carefully guarded." *Terry*, 392 U.S. at 9. Clarity does not hinge on whether "the [reasonable suspicion] law remained unclear on how to determine." *Torres*, 648 F.3d at 1129. But rather, "the standard for judging the objective reasonableness of an officer's actions has long been and remains today the totality of the circumstances." *Id.* (internal quotation marks omitted). Officer Dodge had "fair warning"[11] that he could not detain and frisk absent reasonable suspicion—even to the extent that this case presents "novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances."). As indicated *supra* § I, Officer Dodge lacked reasonable suspicion to detain and frisk Hall under the totality of the circumstances. Thus, Officer Dodge is denied qualified immunity as to Hall's § 1983 claim.

## IV. Plaintiff's State Law Claims

---

[11] In *Terry v. Ohio*, the Court carved out a narrow exception to the probable cause requirement for "those brief detentions which fall short of being full-scale searches and seizures." *Sokolow*, 490 U.S. at 12 (Marshall, J., dissenting). Even under this *Terry* exception, adherence to the Fourth Amendment "requires at least a minimal level of justification," not mere "inchoate and unparticularized suspicion or hunch." *Wardlow*, 528 U.S. at 123-24. Accordingly, *Terry* and progeny provided Officer Dodge with adequate fair warning that his conduct was violative.

Defendant contends that: (A) his detention of plaintiff was lawful under Article I, section 9;[12] (B) his frisk was lawful under Article I, section 9; (C) his identification of plaintiff's name from plaintiff's mail was lawful under Article I, section 9; and (D), plaintiff's claim of battery fails pursuant to privilege, insufficient evidence, or presumption of good faith.

## A. Detention under Article I, section 9

The Oregon Constitution recognizes the right "of the people to be secure in their persons . . . and effects . . . against unreasonable search, or seizure." OR. CONST. art. I, § 9. Plaintiff seeks civil damages and equitable relief for an alleged violative search and seizure under the Oregon Constitution. Complaint ¶ 96, Oct. 9, 2012, ECF No. 1. To the extent that Hall seeks civil damages for his claim; his requested relief is not supported by Oregon law or 42 U.S.C. § 1983. *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 371 (9th Cir. 1998) ("state law violations do not, on their own, give rise to liability under section 1983") (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370-71 (9th Cir. 1996)). In *Hunter v. City of Eugene*, the Oregon Supreme Court found:

> Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations. There is no indication as to the state, for example, that the legislature or the people intended to waive sovereign immunity in the Oregon Tort Claims Act, ORS 30.260 et seq., to permit such implied private rights of action, and that waiver can *only* be accomplished by the legislature, not by this court.

787 P.2d 881, 883 (Or. 1990) (discussing OR. CONST. art. I, § 8); *see also Haliburton v. City of Albany Police Dept.*, 2005 WL 2655416, at *3 (D. Or. Oct. 18, 2005). The OTCA does not accord such a claim for damages under Article I, section 9. *See generally*, OR. REV. STAT. § 30.260-330 (2011). Thus, Hall is precluded from civil damages for his constitutional claim and is

---

[12] Plaintiff does not assert a violation of any Oregon statutory right. Complaint ¶ 9, Oct. 9, 2012, ECF No. 1. However, it should be noted that "analysis of a defendant's rights under ORS 131.605 to 131.625 is substantially the same as the analysis of rights under Article 1, section 9, of the Oregon Constitution." *State v. Ehly*, 854 P.2d 421, 428 (Or. 1993) (footnote 8).

limited to existing common-law, equitable, and statutory remedies.[13] *Barcik v. Kubiaczyk*, 895

P.2d 765, 775 (Or. 1995) ("[plaintiffs' constitutional violations] can be sustained only if they

make . . . claim under an extant common-law, equitable, or statutory theory. . . ."); *Nelson v.

Lane County*, 743 P.2d 692, 697 (Or. 1987) ("The duty may derive from the common law, from

statute or ordinance or from the constitution itself.").

> As to Hall's claim for equitable relief, an Article I, section 9 seizure occurs
>
> (a) If a law enforcement officer intentionally and significantly restricts, interferes
> with, or otherwise deprives an individual of that individual's liberty or freedom of
> movement; or (b) if a reasonable person under the totality of the circumstances
> would believe that (a) above has occurred.

*State v. Fair*, 302 P.3d 417, 423 (Or. 2013) (quoting *State v. Ashbaugh*, 244 P.3d 360,

363 (Or. 2010)). "[T]he touchstone is not whether an officer has restrained a citizen's

freedom of movement to any or some degree, but whether the interference or restraint is

significantly out of the ordinary." *State v. Blair*, 14 P.3d 660, 665 (Or. Ct. App. 2000)

(citing *State v. Holmes*, 816 P.2d 28, 34 (1998)). Article I, section 9 "requires a fact-

specific inquiry examining the totality of the circumstances in the particular case." *State

v. Hall*, 115 P.3d 908, 916 (Or. 2005). Hall did not voluntary comply with Officer

Dodge's requests for information. Rather, Hall continued to walk away from Officer

Dodge until being told that was being detained "for a moment." Decl. of James Dodge

Attachment 1, at 2, Apr. 1, 2013, ECF No. 13; *see generally*, *State v. Painter*, 676 P.2d

309, 311 (Or. 1984) ("[A] show of authority may suffice to convert a police-citizen

encounter into a "stop" of statutory proportion."); *State v. Jacobus*, 864 P.2d 861, 867

(Or. 1993) ("Because defendant voluntarily consented to the search, that search did not

---

[13] Hall cannot claim nominal damages solely under Article 1, section 9. *See e.g.*, *Barcik v. Kubiaczyk*, 895 P.2d 765, 776 (Or. 1995) (finding nominal damages unavailable for Article 1, section 8).

violate Article I, section 9."). Hall was seized pursuant to Oregon law. *State v. Ehly*, 854 P.2d at 429 ("The pivotal factor is whether the officer, even if making inquiries that a private citizen would not, has otherwise conducted himself in a manner that would be perceived as nonoffensive contact if it had occurred between two ordinary citizens."); *State v. Stanley*, 935 P.2d 1202, 1204 (Or. 1997) (finding that a stop occurred when an officer told defendant he was not free to leave under ORS § 131.615(1)).

"[A]n officer may stop an individual based on reasonable suspicion of criminal activity— a lower standard than probable cause that is required for an arrest." *State v. Watson*, 353 Or. 768, 774 (Or. 2013); *Fair*, 302 P.3d at 428 ("Temporary detention for investigation requires only reasonable suspicion"). "Reasonable suspicion means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts." *Stanley*, 935 P.2d at 1204. Overall, Article I, section 9 analysis is substantively the same as Fourth Amendment analysis. *Fair*, 302 P.3d at 427 ("Although the syntax differs, the guarantees of the Fourth Amendment to the United States Constitution is substantively the same"); *United States v. Clawson*, 831 F.2d 909, 913 (9th Cir. 1987) (finding that "Oregon courts use the same objective, reasonable suspicion test as do federal courts in analyzing the propriety of temporary detention.").

As indicated *supra* § I, Officer Dodge contends that he had reasonable suspicion to detain based upon: (1) Hall's presence in a high crime area; (2) Hall's manner of dress; (3) Hall's display of a firearm; (4) Hall's refusal to answer posed questions; and (5), Hall's "suspicious" behavior and movement. This contention is likewise without merit under Oregon constitutional law.

First, Hall's presence in a "high crime" area does not remove "[his] conduct from mere speculation" that he was committing trespass. *Brown*, 570 P.2d at 1004; *State v. Blount*, 924 P.2d 860, 864 (Or. Ct. App. 1996) ("[W]e have consistently held that a person's presence in a 'high crime' area, by itself, is insufficient to provide probable cause . . . ."). However, Officer Dodge is entitled to consider Hall's presence under the totality of the circumstances. *See e.g.*, *State v. Guggenmos*, 253 P.3d 1042, 1051 (Or. 2011) (citing *Wardlow*, 528 U.S. at 124); *State v. Head*, 509 P.2d 52, 54 (Or. Ct. App. 1973) (considering suspect's "location in a high crime area" under totality of the circumstances); *Wardlow*, 528 U.S. at 124.

Second, Hall's manner of dress does not accord Office Dodge reasonable suspicion to detain. *See supra* § I; *State v. Miglavs*, 90 P.3d 607, 613 (Or. 2004) ("a person's appearance alone never can support reasonable suspicion of unlawful activity."); *State v. Bates*, 747 P.2d 991, 994 (Or. 1987) ("This concern is entitled to no weight, whether viewed by itself or added to other factors"); *State v. Valdez*, 561 P.2d 1006, 1011, (Or. 1977) (explaining that "shined shoes, sharp clothes, neat 'Afro' haircuts and people who stand and stare at officers" cannot say much about the people engaging in criminal activity under ORS § 131.615). As discussed *supra* § I, Hall's dress is only relevant to the extent that it reflects suspicious or odd behavior (e.g., if Hall attempted to conceal his face).

Third, Hall was permitted to carry his firearm openly in a belt holster and to carry his knife openly.[14] *See supra* § I; *State v. Turner*, 191 P.3d 697, 701-02 (Or. Ct. App. 2008) (finding that a sword that was readily identifiable did not create reasonable suspicion to stop); *State v. Johnson*, 772 P.2d 426, 428-29 (Or. Ct. App. 1989) (finding reasonable suspicion dissipated

---

[14] Office Dodge stated at deposition that "[he] noticed [Hall] had a knife in [his] right pocket that was clipped." Decl. of Kevin Hall Attachment 2, at 5, Mar. 3, 2013, ECF No. 16.

once an officer knew that defendant carried his knife lawfully).  There is no indication that Hall

concealed his knife or firearm in violation of Oregon law.  Thus, Hall's lawful behavior is

considered, but accorded less deference.

Fourth, Hall had a constitutionally protected right to not answer Officer Dodge's

inquiries.  *Terry*, 392 U.S. at 32-33; *State v. Medinger*, 230 P.3d 76, 94 (Or. Ct. App. 2010)

(finding that "defendant's exercise of his constitutionally protected right to not answer

[Officer's] questions does not affect our probable cause analysis."); *State v. Brown*, 825 P.2d

282, 284 (Or. Ct. App. 1992) ("Defendant's person . . . [is] protected by Article I, section 9 . . . .

A mere assertion of one's constitutional rights cannot be a basis for depriving an individual of

those rights."); *cf. State v. Rodriguez*, 854 P.2d 399, 412 (Or. 1993) ("When defendant heard the

knock on the door, he was free to ignore it and maintain his protected privacy interest.").

Fifth, Hall's behavior is insufficient to give rise to reasonable suspicion.  *See supra* § I;

*State v. Guggenmos*, 253 P.3d at 1051 (finding that "[officer's] observation of defendant

repeatedly turning to look at [officer's] patrol vehicle and then averting his gaze did not give rise

to a reasonable suspicion that defendant was engaged in criminal conduct.") (citing *Wardlow*,

528 U.S. at 124); *Hall*, 115 P.3d at 916; *State v. Houghton*, 754 P.2d 13, 14 (Or. Ct. App. 1988)

(finding that "[d]efendant's nervousness and the fact that he seemed to be sitting at an odd angle

did not justify a reasonable belief that he had committed a crime" under ORS § 131.615(1)).

Hall's behavior is considered, but is accorded less deference.  *See e.g.*, *Guggenmos*, 253 P.3d at

1051.[15]

---

[15] In *Guggenmos*, the Oregon Supreme Court found that "[t]he actions of the men in running down the stairs and disregarding a verbal derivative to stop from a person wearing plainclothes . . . was a circumstance that understandably justified heightened police attention." 253 P.3d at 1051.  However, the Court ultimately found that reasonable suspicion did not exist to stop defendant under the officer safety exception. *Id.*

Defendant contends that aggregated together, these factors constitute reasonable suspicion to stop under Article I, section 9. *See e.g.*, *State v. Wiseman*, 261 P.3d 76, 78 (Or. Ct. App. 2011) ("As under state law, the various facts making up the totality of the circumstances are to be viewed in combination with each other and not in isolation). This contention is without merit. Like the Fourth Amendment, the touchstone of Article I, section 9 is reasonableness. *Fair*, 302 P.3d at 427. Reasonableness "typically requires a degree of justification for a seizure of a person that correlates with the extent to which police conduct intrudes on that citizen's liberty." *Id*. at 428. Officer Dodge's interference, although relatively limited in temporal scope, interfered with Hall's "sacred" and "carefully guarded" interest in his "possession and control of his own person." *Terry*, 392 U.S. at 9. Officer Dodge contends that his observations, when evaluated through the lens of his training and experience, ripen into reasonable suspicion. Yet, such "instinct and experience cannot, however, form the entire basis for reasonable suspicion." *Valdez*, 561 P.2d at 1010-11 (discussing reasonable suspicion under ORS § 131.615). Officer Dodge's behavioral observations, even when combined, are simply not "very remarkable." *Valdez*, 561 P.2d at 1011 ("because no practical control can be exercised over police by courts if, in the absence of any very remarkable activity, the officer's instinct and experience may be used as the sole reason . . . ."). Hall walked "very slowly" along a public street during the middle of the day, wearing a hooded sweatshirt, with an openly carried firearm, and refused to answer Officer Dodge's inquiries. Article I, section 9, like the Fourth Amendment, requires more than this minimal showing. *See supra* § I; *State v. Caraher*, 653 P.2d 942, 946 (Or. 1982) ("[U]niformity between state and federal law is an important consideration . . . ."); *State v. Tourtillott*, 619 P.2d 423, 427 (Or. 1980) ("Under Article I, section 9, of the Oregon

Constitution, we must accord the defendant at least as much protection as that provided by the Fourth Amendment . . . .").

## B. Frisk under Article I, section 9

An officer may frisk a suspect to "protect himself or others if, during the course of a *lawful encounter* with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *State v. Rudder*, 217 P.3d 1064, 1068 (Or. 2009) (emphasis added) (quoting *State v. Bates*, 747 P.2d 991, 993-94 (Or. 1987)). However, "a limited precautionary pat down is authorized under Article I, section 9, only when the initial contact between the police and the individual is lawful." *Miglavs*, 90 P.3d at 613. Absent reasonable suspicion that a suspect has committed a crime, an officer is generally not free to "frisk" a suspect.[16] Officer Dodge lacked reasonable suspicion to seize Hall and did not meet any recognized exception under Oregon law. *See supra* § IV(B) (footnote 16). Thus, Officer Dodge unreasonably searched Hall's person under Article I, section 9.

## C. Search of Plaintiff's Mail under Article I, section 9

A "search" occurs under Article I, section 9, when the government invades a protected privacy interest. *State v. Meredith*, 96 P.3d 342, 344 (Or. 2004); *State v. Smith*, 963 P.2d 642, 646 (Or. 1998) (defining "privacy interests" as the individual's interest in freedom from certain forms of governmental scrutiny). This analysis differs from Fourth Amendment analysis because it extends protection not to the "privacy that one reasonably *expects* but the privacy to which one has a *right*." *State v. Campbell*, 759 P.2d 1040, 1044 (Or. 1988). Despite this difference in

---

[16] Oregon courts also recognize the lawful use of frisk pursuant to a civil commitment hearing, medical emergency, border patrol checkpoint, and game checkpoint. *State v. Hampton*, 651 P.2d 744, 746 (Or. Ct. App. 1982). However, these alternative grounds for detention are not relevant under these circumstances.

analysis, the Article I, section 9 conclusion is the same. If Hall's narrative is credited, Officer

Dodge's conduct likely constitutes a violative search. *See e.g.*, *Smith*, 963 P.2d at 646 ("[A]

search involves some form of invasion into private space."); *State v. Bellar*, 217 P.3d 1094, 1106

(Or. Ct. App. 2009) ("That right or 'interest in freedom from scrutiny' is determined by social

and legal norms of behavior, such as trespass laws . . . .") (emphasis added) (quoting *Campbell*,

759 P.2d at 1047); *State v. Malvern*, 215 P.3d 114, 116 (Or. Ct. App. 2009) ("In the absence of a

basis for implying such an invitation, the detectives' actions constituted a trespass, and their

observations resulting from that trespass are subject to suppression). In contrast, if Officer

Dodge's narrative is credited, his conduct likely does not constitute a violative search. *State v.*

*Owens*, 729 P.2d 524, 533 (Or. 1986) ("But it has long been held that purposeful looking or

listening alone does not make unlawful a warrantless search of what can be seen in plain view . .

. ."); *State v. Louis*, 672 P.2d 708, 710 (Or. 1983) (finding that "[t]he photographs used as

evidence in this case did not represent [a search]" because "they merely recorded what could be

seen and had been seen without the camera."). Accordingly, a genuine question of material fact

remains as to the constitutionality of Officer Dodge's search under Article I, section 9 and

neither party is entitled to summary judgment.

## D. Plaintiff's Battery Claim

Plaintiff contends that defendant battered him during the course of an unlawful frisk. In

response, defendant makes three arguments; first, any contact with plaintiff was pursuant to a

valid statutory frisk, second, plaintiff presented insufficient evidence as to defendant's intent to

cause offensive contact, and third, defendant is entitled to a presumption of good faith.

Plaintiff's claim of battery is restricted, but not precluded by the OTCA.[17] Battery is recognized under the OTCA as a duty derived from the common law. *Doe 1 v. Lake Oswego School Dist.*, 297 P.3d 1287, 1293 (Or. 2013) (defining battery in the context of OTCA); *Nelson v. Lane County*, 404 Or. 97, 107 (1987) ("The duty may derive from the common law, from statute or ordinance or from the constitution itself."). "To constitute liability for a battery, the conduct brings about the harm must be an act of volition on the actor's part, and the actor must have intended to bring about a harmful or offensive contact or put the other party in apprehension thereof." *Doe 1*, 297 P.3d at 1293 (quoting *Bakker v. Baza'r, Inc.*, 551 P.2d 1269, 1271 (Or. 1976)). "[B]attery may be either (or both) of two types—battery that causes harmful contact or battery that causes offensive contact." *Id*. (citations omitted) (internal quotation marks omitted). Plaintiff alleges offensive contact. Mem. in Supp. of Pl.'s Mot. for Summ. J. Attachment 1, at 11, April 12, 2013, ECF No. 16.

Contrary to defendant's first argument, his frisk is not privileged because it is violative under both Article I, section 9 and ORS § 131.615 & 625. Under ORS § 131.615(5), "[a] peace officer making a stop may use the degree of force reasonably necessary to make the stop and ensure the safety of the peace officer, the person stopped or other persons who are present." OR. REV. STAT. § 131.615 (2011). However, ORS § 131.615(5) only authorizes force to the degree that is "reasonably necessary to make the stop." *Watson*, 353 Or. at 777 (Or. 2013). Because

---

[17] "The remedy provided by [the OTCA] is exclusive of any other action or suit against any such officer, employee or agent of a public body whose act or omission within the scope of the officer's, employee's or agent's employment or duties gives rise to the action or suit. *No other form of civil action or suit shall be permitted*." OR. REV. STAT. § 30.265(2) (2011) (emphasis added).

Officer Dodge lacked reasonable suspicion to stop Hall under ORS 131.615(1),[18] he was not privileged to use force to effectuate the violative stop.

Under ORS § 131.625(1), "[a] peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and dangerous to the officer or other persons present." Absent reasonable suspicion that a suspect has committed a crime under ORS § 131.615(1), an officer is generally not free to "frisk" a suspect. *See e.g.*, *State v. Taylor*, 661 P.2d 569, 571 (Or. Ct. App. 1983) ("A frisk for weapons under ORS 131.625(1) is permitted only when the frisked person is already "stopped" within the meaning of ORS 131.615(1)"); *Hampton*, 651 P.2d at 746 (finding that "absent reasonable suspicion that he had committed a crime, cause to place him under a civil commitment hold or a medical emergency, they were not free to 'frisk' him."). Because Officer Dodge lacked reasonable suspicion to stop Hall under ORS § 131.615(1), he was not privileged to frisk Hall under ORS § 131.625(1). *See supra* § IV(D) (footnote 18).

Defendant's second argument calls attention to the distinction "between an intent to engage in conduct which is likely to result in contact and an intent to engage in conduct for the purpose of causing harmful or offensive contact." *Gakk Inc. v. Acceptance Cas. Ins. Co.*, No. CV 09-6282-MO, 2010 WL 3259905, at *2 (D. Or. Aug. 16, 2010) (citing *Cook v. Kinzua Pine Mills Co.*, 293 P.2d 717, 723 (Or. 1956)). Officer Dodge contends that Hall has "no evidence to support" this latter prong of intent. However, this court views the evidence in the light most

---

[18] As mentioned in footnote 12, analysis of Hall's rights under ORS 131.615(1) is "substantially the same" as analysis under Article I, section 9. *See e.g.*, *Ehly*, 854 P.2d at 428; *Miglavs*, 747 P.2d at 608 (discussing the constitutionality of a pat down, but using "patdown" definition in ORS 131.605(3)); *Hall*, 115 P.3d at 926 ("[The] encounter with defendant constituted an unlawful stop under ORS 131.615(1) (1995) and, consequently, also an unlawful 'seizure' under Article I, section 9 . . . ."); *State v. Jacobus*, 864 P.2d 861, 865 & 867 (finding lawful stop under both ORS § 131.615(1) and Article I, section 9); *Valdez*, 561 P.2d at 1009 (observing that "[s]ince [ORS 131.615 (1973)] was an effort to codify the rationales of Terry and Cloman, it is proper for us to examine those cases in making our decision, even though we are interpreting a statute.").

favorable to the non-moving party. "Because the complaint contains no explicit allegations that [Officer Dodge] acted with intent to injure [Hall], [Officer Dodge's] intent must be inferred, if at all, from the allegations of his conduct." *Gakk Inc.*, 2010 WL 3259905, at *3. Hall contends, and this court has found, that Officer Dodge unreasonably stopped and frisked Hall in violation of the Fourth Amendment and Article 1, section 9. From these circumstances, it is "inferable that [Officer Dodge] knew that his conduct would be considered objectively offensive when considered in the context of his course of conduct." *Harris v. Pameco Corp.*, 12 P.3d 524, 529 (Or. Ct. App. 2000) (finding that trial court improperly granted verdict as to battery claim); *Jordan v. City of Eugene*, No. 05-6164-TC, 2006 WL 1697636, at *10 (D. Or. June 12, 2006) (finding that search conducted by police "could constitute a battery-it was, on plaintiff's versions of the facts, a non-consensual, offensive contact").

In *Rich v. Cooper*, the Oregon Supreme Court recognized the "presumption that a police officer acts in good faith in determining the amount of force to be used in making an arrest." 380 P.2d 613, 618 (Or. 1963). However, this presumption is inapplicable as to an unlawful temporary detention. *See e.g.*, *Ballard v. City of Albany*, 191 P.3d 679, 686 (Or. Ct. App. 2008) (discussing rebuttal of presumption in context of alleged excessive force during course of carrying out an arrest); *Kaady v. City of Sandy*, 2008 WL 5111101, at *26 (D. Or. Nov. 26, 2008) (same). Thus, there remains a genuine issue of material fact as to defendant's intent to cause offensive contact and neither party is entitled to summary judgment.

## CONCLUSION

For these reasons, defendant's motion for summary judgment (#12) and plaintiff's motion for summary judgment (#16) are GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.


DATED this 5th day of September, 2013.


s/ Michael J. McShane                  _____
Michael J. McShane
United States District Judge

25 – OPINION AND ORDER